## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------X

CONTINENTAL CASUALTY COMPANY, as
Subrogee to ASSOCIATED GROCERS, INC.,

CASE NO.

               Plaintiff,

COMPLAINT FOR
DECLARATORY RELIEF
RELIEF

     -against-

LIBERTY MUTUAL INSURANCE COMPANY,

           Defendant.

---------------------------------------------------------------X

Plaintiff, Continental Casualty Company ("Continental"), as subrogee to Associated Grocers, Inc. ("Associated") by and through its attorneys, as and for its Complaint against Defendant, Liberty Mutual Insurance Company ("Liberty"), alleges upon information and belief as follows:

### INTRODUCTION

1.     This is a Complaint for a Declaratory Judgment in which Plaintiff, Continental, as a subrogee to Associated, seeks a determination concerning the scope and nature of Liberty's obligations to Associated under a primary automobile liability insurance policy Liberty issued to Associated.

2.     Plaintiff, Continental, additionally seeks a determination that it is legally and equitably subrogated to the rights of Associated against Liberty as a result of its payment of defense and indemnity costs in an underlying personal injury action when it was not required to pay such costs due to Liberty's bad faith conduct.

## THE PARTIES

3.      Plaintiff, Continental, is an Illinois corporation with its principal place of business located in Illinois.  Plaintiff, Continental, is in the business of providing and underwriting insurance, including an umbrella automobile liability insurance policy issued to Associated as more fully described below.

4.      Subrogor, Associated, is a Louisiana corporation with its principal place of business located in Louisiana.

5.      Defendant, Liberty, is a Massachusetts corporation with its principal place of business located in Massachusetts.   Defendant, Liberty, is in the business of providing and underwriting insurance, including a primary automobile liability insurance policy issued to Associated.  Liberty's policy provides primary coverage to Associated above the limits of Continental's umbrella policy.

## JURISDICTION AND VENUE

6.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

7.      This action is currently ripe for adjudication.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

### A.   UNDERLYING ACTION

10.   This Declaratory Judgment Complaint concerns an underlying personal injury action involving Shelby Lynn Kimble ("Kimble"), who was severely injured on November 30, 2006 as a result of an automobile accident.  Upon information and belief, Kimble was injured while riding as a passenger in a school bus.  The accident occurred when a tractor-trailer owned by Associated collided with the rear end of Kimble's bus in the vicinity of 7207 Highway 105, St. Landry Parrish, Louisiana.

11.   On November 13, 2007, Van Blake Kimble and Machelle Kimble, Kimble's parents, filed suit against Associated and other defendants in the St. Landry Parrish District Court, Louisiana in an action styled, *Van Blake Kimble and Machelle Kimble, individually and on behalf of their minor children, Shelby Lynn Kimble, et al. v. Liberty Mutual Insurance Company, et al.,* (the "Kimble Action").  The Kimble Action contained two causes of action for negligence and loss of constortium.  As discussed in more detail below, Liberty did not inform Continental of the existence of the Kimble Action until roughly three years after it was filed.

### B.   LIBERTY'S ORIGINAL CLAIM INVESTIGATION

12.   Upon information and belief, Liberty was notified of the accident on the same day it occurred and immediately dispatched a claim investigator to the accident scene.  The investigator subsequently met with Associated's driver who, upon information and belief, admitted that he collided with the rear-end of Kimble's bus because he shifted his focus from the highway to something on the side of the road.

Thus, Liberty was immediately made aware that all questions of Associated's liability for the underlying accident were effectively resolved.

13.     Liberty informed Continental on or about March 15, 2007 that Liberty was "trying" to settle all claims arising from the Kimble accident for medical expense payments in addition to nominal pain and suffering damages. Liberty specifically informed Continental that Liberty expected all claims to settle within the primary layer of coverage afforded under Liberty's policy. Liberty again informed Continental on July 19, 2007 that all claims, including the Kimble claim, were close to resolution and that all claims should settle "well within" the Liberty Policy limits.

## C.     LIBERTY FAILS TO SETTLE ALL CLAIMS, EXPOSING ASSOCIATED AND CONTINENTAL TO EXCESS JUDGMENT

14.     Almost three years later, on February 3, 2010 and February 11, 2010, Liberty respectively informed Associated and Continental that Kimble's claims remained open in the form of the Kimble Action and represented significant exposure to Continental's excess layer of coverage. This was the first time (more than three years after the underlying accident) that Liberty informed Associated or Continental that Associated was exposed to an excess judgment above the limits of Liberty's coverage.

15.     On February 11, 2010, Liberty also informed Continental that Liberty had already offered $125,000 to settle Kimble's claim, but Kimble demanded $160,000. The $160,000 offer was made during an earlier mediation. However, neither Continental, nor Associated was kept informed of the status of any settlement negotiations with Kimble, or of the consequences that could result if settlement demands made by Kimble, including the $160,000 offer, were rejected. Liberty further advised Continental

that the Kimble Action was scheduled for trial on April 12, 2010 in Saint Landry Parrish, Louisiana – a venue that Liberty conceded to Continental was not favorable to Associated's defense. Liberty further disclosed that Kimble was still undergoing treatment for her injuries (almost three years after the accident) and had been diagnosed by her doctor as suffering from facet joint syndrome. Upon information and belief, none of this information was previously provided to Continental or Associated.

16.     In a pre-trial report dated February 10, 2010, Liberty's appointed defense counsel, Ken Giardino, noted that Associated's liability was certain. Giardino also concluded that he had no basis for arguing that "the injuries and pain [suffered by Kimble] were caused by anything other than the accident." Giardino placed a jury verdict value of $450,000 to $650,000 on Kimble's claims, which was well in excess of Liberty's remaining coverage and well in excess of the original demand made by Kimble for $160,000. Upon information and belief, neither this report, nor any other report from Giardino to Liberty concerning the status of the Kimble Action, was ever sent to Associated.

17.     Following Liberty's notification that Associated was exposed to a judgment beyond Liberty's layer of coverage, Continental made every effort to settle with Kimble prior to trial. On March 3, 2010, Continental spoke with Liberty regarding a further mediation scheduled for March 15, 2010. Liberty declined to share mediation expenses with Continental and stated that Liberty probably would not attend the mediation at all (indeed, Liberty did not attend the mediation that took place on March 15th). Without Liberty's participation, the mediation was unsurprisingly a failure and the parties were forced to proceed with trial of the Kimble Action.

D.     **THE KIMBLE TRIAL**

18.     The Kimble Action proceeded to trial on April 12, 2010.  Following

presentation of all parties' arguments, the jury awarded Kimble $1,000,000 in future

medical expenses in addition to $50,000 in pain and suffering.   These awards, in

addition to various other amounts for loss of consortium, past medical expenses and

mental anguish, resulted in a total verdict of $1,185,345.83.   Kimble's award was

increased on post-trial motions to $1,340,345.83, exclusive of prejudgment and post-

judgment interest.

19.     On August 27, 2010, Continental, on behalf of Associated, paid

$1,164,583.01 towards satisfaction of Kimble's judgment in addition to $205,424.60 in

prejudgment interest.  Continental's payment followed repeated, unheeded demands

that Liberty assume liability for the entire Kimble judgment, including all prejudgment

interest, due to its bad faith failure to settle the Kimble claim within its limits of

coverage or otherwise keep Continental and Associated informed of settlement

negotiations.

E.     **THE RELEVANT POLICIES**

1.     **THE LIBERTY POLICY**

20.     Liberty issued a primary automobile insurance policy to Associated,

policy number AS7-191-098908-86 (the "Liberty Policy").  The Liberty Policy provides

$1,000,000 in liability coverage for each accident for the May 24, 2006 to May 24, 2007

policy period and is subject to a $100,000 deductible for each accident.  The Liberty

Policy, which provides coverage for claims such as those asserted in the Kimble Action,

contains the following relevant terms:

**Section II – Liability Coverage**

A.      **Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

> We have the right and duty to defend any "insured" against a "suit" asking for such damages…However, we have no duty to defend any "inusred" against a "suit" seeking damages for "bodily injury" or "property damage"…to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2.      **THE CONTINENTAL POLICY**

21.     Continental issued an umbrella liability insurance policy to Associated, policy number L 2076550957, in effect for the policy period of May 24, 2006 to May 24, 2007. (the "Continental Policy").  The Continental Policy contains limits of liability of $20,000,000 per occurrence and in the aggregate, as well as a $10,000 Retained Limit. The Continental Policy provides coverage in excess of the limits of the Scheduled Underlying Policies, including the automobile liability policy issued by Liberty.  The Continental Policy, which covers accidents such as the one at issue in the Kimble Action, contains the following relevant provisions:

**SECTION I-COVERAGES**

1.   **Insuring Agreement**

We will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as "ultimate net loss" because of:

   **a.** Bodily Injury";
   **b.** "Property Damage";
   **c.** "Personal Injury"; or
   **d.** "Advertising Injury", caused by an "incident" which takes place during the policy period and in the policy territory.

**18. "Ultimate net loss"**

   **a.** "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:
     **(1)** final adjudication on the merits; or
     **(2)** through compromise settlement with our written consent or direction;
Because of "incident(s)" covered by this policy.

However, it includes the above mentioned sums only after  deducting all other recoveries and salvages.

   **b.** "Ultimate net loss" does not include the following:

     **(1)** costs or expenses related to:
       **(a)** litigation,
       **(b)** settlement;
       **(c)** adjustment; or
       **(d)** appeals;

Nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to  pay to or on behalf of the insured;

     **(2)** pre-judgment interest;
     **(3)** office costs and expenses and salaries and expenses of the employees of an insured;
     **(4)** our office costs and expenses and salaries of our  employees; or
     **(5)** general retainer and/or monitoring fees of counsel retained by the insured.

   **19. "Underlying Insurer"** means an insurer whose policy covers an "incident" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing:

**a.** "unscheduled underlying insurance; and

**b.** "scheduled underlying insurance.

\*       \*       \*

22.      Thus, in accordance with the plain terms of the Continental and Liberty Policy's, Liberty is responsible for the defense, indemnification and potential settlement of all claims falling within its $1,000,000 primary layer of coverage.  Continental is in turn responsible for coverage of any covered claim exceeding the limits of Liberty's policy.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT LIBERTY (BAD FAITH)

23.      Plaintiff repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

24.      Continental is subrogated to the rights of Associated against Liberty, because Continental expended costs to defend the Kimble Action on behalf of Associated and to settle the Kimble Action, Continental is, therefore, entitled to assert Associated's rights against Liberty for Liberty's bad faith conduct.

25.      Liberty owed Associated a duty of good faith and fair dealing under the Liberty Policy.  Moreover, under the Liberty Policy, Liberty reserved to itself the duty to defend and indemnify Associated for any covered claim.  Liberty further reserved to itself the duty to settle claims made against Associated when otherwise covered by the Liberty Policy.

26.     Despite being aware that Kimble sustained severe personal and economic injuries as a result of her accident, Liberty refused to negotiate in good faith with Kimble or to settle the Kimble Action within the limits of coverage provided by the Liberty Policy.   Moreover, Liberty never kept Associated adequately advised of the Kimble Action's status; in particular, the status of settlement negotiations.   As a result, and as a direct consequence of Liberty's refusal to settle with Kimble based upon the many warning signs that trial of the Kimble Action would expose Associated to an excess judgment, Kimble ultimately obtained a judgment in the Kimble Action that was well in excess of the coverage available under the Liberty Policy.

27.     Liberty's refusal to negotiate settlement within its limits of coverage, or to fully advise Associated of the status of settlement discussions and the Kimble Action in general, constituted bad faith.

28.     Accordingly, Continental, as the subrogee of Associated, is entitled to a declaration that Liberty acted in bad faith by refusing to properly settle the Kimble Action and by failing to otherwise keep Associated apprised of Liberty's handling of the Kimble Action, in addition to monetary damages, and costs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT LIBERTY (STATUTORY BAD FAITH CLAIMS HANDLING)

29.     Plaintiff repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

30.     The underlying accident took place in Louisiana and Associated is a Louisiana corporation that purchased the Liberty Policy in Louisiana.

31.     Liberty refused to settle the Kimble Action within its policy limits and thereby exposed Associated to an excess judgment.   In doing so, Liberty failed to properly communicate the status of the Kimble Action to Associated, failed to convey settlement offers and the import of those settlement offers to Associated and otherwise withheld material information from Associated.

32.     Liberty's bad faith actions with respect to its handling of the Kimble Action on behalf of Associated violated Louisiana Statute 22:1973, which states that an insurer "owes to his insured a duty of good faith and fair dealing." It further provides that "[t]he insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

33.     As a consequence, Continental, as the subrogee of Associated, is entitled to a declaration that Liberty violated Louisiana Statute 22:1973 and that Continental is entitled to statutory damages and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST
DEFENDANT LIBERTY
(BREACH OF CONTRACT)**

34.     Plaintiff repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

35.     Under the Liberty Policy, Liberty owed Associated a contractual duty to defend and indemnify all covered claims in good faith.

36.     In violation of its contractual duty, Liberty failed to settle the Kimble Action within its policy limits and failed to keep Associated advised of settlement negotiations in further violation of its contractual duty of good faith.

37.     By breaching its Policy obligations, Liberty caused Associated to suffer a judgment in excess of Liberty's policy limits.

38.     Continental, as Associated's subrogee, is consequently entitled to a declaration that Liberty breached its contractual obligation to act in good faith towards Associated.  Continental is, therefore, entitled to damages, attorneys fees and costs arising out of Liberty's breach of contract.

**WHEREFORE**, Plaintiff, Continental, as subrogee to Associated, demands judgment as against defendant, Continental, as follows:

A.     Determining and declaring that Defendant, Liberty, is obligated to pay Continental, as the subrogee of Associated, compensatory and punitive damages in addition to attorneys fees and costs due to Liberty's bad faith failure to settle the Kimble Action within Liberty's limits of coverage and because of its failure to communicate with Associated regarding settlement negotiations;

B.     Determining and declaring that Defendant, Liberty, is obligated to pay Continental, as the subrogee of Associated, damages under Louisiana Statute 22: 1973, including attorneys fees and costs, due to Liberty's bad faith failure to settle the Kimble Action within Liberty's limits of coverage and because of its failure to communicate with Associated regarding settlement negotiations;

C.     Determining and declaring that to the extent that Defendant, Liberty, is obligated to pay Continental, as the subrogee of Associated, compensatory and punitive damages in addition to attorneys' fees and costs due to Liberty's breach of the Liberty Policy by failing to settle the Kimble Action within its limits of coverage and by failing to properly communicate with Associated regarding the status of the Kimble Action; and

D.     Granting such other and further relief as this Court may deem just, proper and equitable, including interest, costs and attorneys' fees.

Dated:     September 9, 2010

BY: _____/s/ Kimberly A. Miale_____
         Richard E. Heifetz, Esq.
         Kimberly A. Miale, Esq.
         TUCKER, HEIFETZ & SALTZMAN, LLP
         100 Franklin Street
         Boston, Massachusetts 02110
         Telephone: 617-557-9696
         Fax: 617-227-9191


         Of Counsel:
         CARROLL McNULTY & KULL L.L.C.
         Kristin V. Gallagher, Esq.
         120 Mountain View Boulevard
         P.O. Box 650
         Basking Ridge, NJ 07920
         Telephone:  (908) 848-6300

         Attorneys for Plaintiff
         Continental Casualty Company